---

[No. 8634.   Department Two.—May 30, 1885.]
JOHN CORCORAN, ET AL., APPELLANTS, *v.* ISADORE MERLE, ET AL., RESPONDENTS.

EQUITY—BONA FIDE PURCHASER—NOTICE—EVIDENCE.—Upon a review of the evidence, *held*, that the defendant was a *bona fide* purchaser of the land in controversy for value and without notice of the plaintiffs' alleged equities.

APPEAL from a judgment of the Superior Court of the city and County of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*John L. Love*, and *James A. Waymire*, for Appellants.

*Edward J. Pringle*, and *R. R. Provines*, for Respondents.

THORNTON, J. — In this cause, which is an action to redeem certain lands from a mortgage, plaintiffs were, on motion of defendants, non-suited. The mortgage from which plaintiffs claim to redeem was executed by Daniel Jones to Ann Reynolds, on the 12th day of December, 1878, to secure an indebtedness of Jones to Ann Reynolds amounting to the sum of $6,000, evidenced by Jones' note bearing date on the day last named, with interest, etc. Plaintiffs aver, with a detail of explanatory circumstances, that Jones held the property for them, and as their trustee, and that defendant Merle purchased from Jones with full notice of their rights. They offer to pay the amount found to be due on the mortgage, after crediting the rents and profits received by Merle and Jones, who have been in possession for some time, during which they received rents from the property mortgaged. The defense of Merle, who is really the only defendant, is that he is a purchaser from Jones for a valuable consideration, without notice of any right of plaintiffs, or of either of them.

The facts shown in evidence are as follows: —

On the 12th of July, 1870, the plaintiff and his then wife, Mary, who were then the owners of the land involved in this litigation, borrowed of the Savings and Loan Society $4,000, and to secure the loan and future advances not to exceed $6,000, they on the same day executed a deed of trust to B. D. Dean and E. W. Burr, by the terms of which they granted and conveyed this land to the trustees in joint tenancy, and all the estate they then had or might in any way acquire to it. The deed of trust is in form such as is generally used by the society mentioned above. This deed was recorded July 16, 1870. In 1875, Mary Corcoran, above mentioned, died, leaving the plaintiff John her sole heir. In 1876, John married the plaintiff

Annie. On the 27th of May, 1877, the plaintiffs executed a deed of trust to E. W. Burr and J. N. Shotwell to secure a loan of $6,000, and future advances, not to exceed $10,000, made to them by the society above mentioned. Both of these loans were evidenced by notes executed by the grantors above named, respectively, at the dates mentioned, to the Savings and Loan Society. On the 18th day of January, 1877, John Corcoran conveyed an interest in the land to his wife, the plaintiff Annie. On the 12th of March, 1878, G. Raisch brought an action in the late Twelfth District Court against the plaintiffs E. W. Burr, J. M. Shotwell, and H. P. Gallagher, executor of the last will of Mary Corcoran, deceased, to charge the land in question with the lien of a street assessment held by Raisch, in which a default was entered on the 29th of March, 1878, decree entered on the 1st of April, and sale regularly made under the decree to Raisch, on the 2nd of May of the same year.

Just before the expiry of six months from the sale just mentioned to Raisch, the plaintiff John Corcoran entered into a negotiation with D. M. Seaton and Charles E. Pearson for the sale to them of the land encumbered as above set forth. It was agreed between John Corcoran, of the one part, and Seaton and Pearson, of the other, that the latter should pay off the indebtedness to the Savings and Loan Society, and the street assessment encumbrance, and pay John Corcoran $2,500 in addition. An attorney was employed to prepare a deed of the property, by which John Corcoran should, on the above payments being made by Seaton and Pearson, convey to them the above-mentioned land. The deed was drawn up and ready for signature, when, on the last day on which there could be a redemption from Raisch's judgment, one Daniel Jones, as a judgment creditor, filed a notice of redemption from the aforesaid sale under the Raisch judgment. Jones had, or claimed to have, a right to redeem on a judgment before that time recovered in the Municipal Court of Appeals. John Corcoran then refused to sign the deed. It appears that Jones was an instrument of T. P. Riordan and B. J. Shay, who put him in the position to redeem for them from the sale on the Raisch judgment. Shay and Riordan were using the name of Jones, who was a clerk in Shay's office.

The carrying out of the agreement between Corcoran, Seaton, and Pearson was broken off in this way. Corcoran was much embarrassed by the encumbrances on his property above mentioned, and on the advice of Father H. P. Gallagher, applied to T. P. Riordan to help him out. The day before he (Corcoran) was to sign the deed to Seaton and Pearson, he met Riordan in the street, and the latter told him that he and his friend B. J. Shay could do better for him than he was doing in the trade with Seaton and Pearson; that they could either get the property free or get more money for him. Shay was present, and told him that Seaton and Pearson were Yankees and would swindle him; that he and Riordan were Irishmen, and if he (Corcoran) would stick to them (Shay and Riordan), they would see him all to rights, and that he would either get back his property or enough money to go back to Ireland and live in comfort all the rest of his life. Upon this, Corcoran went with Riordan to the office of the attorney and got the deed, which he had declined to execute on November 2, 1878. Before Corcoran had refused to sign the deed, Pearson had paid to the Savings and Loan Society all the money due it by the Corcorans; had taken from it an assignment of the promissory notes executed to it by the plaintiffs, and had obtained a reconveyance to John and Mary Corcoran by Burr and Dean, trustees, under the deed of July 12, 1870. This deed was recorded on the 29th day of January, 1879. Seaton, finding out that Jones was acting for Shay, opened negotiations with him, and discovered that Shay and Riordan were working together to secure the property. Seaton had frequent interviews with Shay and Riordan, and it was finally agreed between them that the property should be conveyed to John S. Barrett, as trustee, to hold for thirty days, and then convey it to Seaton and Pearson, unless within that time Shay and Riordan should pay Barrett for them $6,000, and in case they paid that sum, that then Barrett should convey to any one they might name. At the suggestion of Shay, Pearson requested Burr and Shotwell, trustees, to advertise the property for sale. They did so, and it was sold on the 4th of December, 1878, to John S. Barrett for $6,500. There was, in fact, no money paid, and Barrett was not personally a bidder at the sale. Seaton bid it off in Barrett's name,

and the property was knocked down to him at the sale. December 5, 1878, Burr and Shotwell, trustees under the deed of May 21, 1877, for the consideration of $6,500, conveyed to John S. Barrett all the estate they had derived under the trust deed aforesaid. About that time a sheriff's deed was made to Pearson, who had procured an assignment of the certificate of sale from Raisch, and by Pearson was assigned to Barrett. On the 12th of December, 1878, Barrett received from Shay and Riordan $6,000 for Seaton and Pearson, and on the same day Barrett executed a deed conveying the property to Daniel Jones. This deed expressed a consideration of $20,000. Barrett paid the $6,000 over to Seaton and Pearson. On the 12th of December, 1878, Daniel Jones mortgaged the property to Ann Reynolds for $6,000. On the 29th of January, 1879, the deed from Barrett to Jones was recorded.

Such was the state of the title when the defendant Merle purchased of Daniel Jones. The deed of conveyance from Jones to Merle, of the land involved in this suit, bears date of July 3, 1879. Merle testified that before and at the time he paid the money to Jones for the property, and received the deed, he knew nothing of the transactions between Shay, Riordan, and Corcoran, or between Seaton and Pearson and Corcoran, or between Shay and Riordan and Seaton, or Pearson, or any of them, and there is no testimony contradicting this statement. The payment of the purchase money by Merle on the day of the execution of the deed is established by clear and uncontradicted evidence. We find nothing in the documentary evidence in the case to put Merle on inquiry as to these transactions. There was no legal title outstanding in Burr and Dean, trustees under the deed of July 12, 1870, at the time Merle purchased. It had been got in on November 2, 1878, by a deed of release to the plaintiff John Corcoran and Mary Corcoran, and was recorded on the 29th of January, 1879, months before the date of the deed to Merle. As soon as the release above mentioned was made by Burr and Dean, on the 2d of November, 1878, it passed at once by operation of the trust deed to Burr and Shotwell to them, the grantees in the last trust deed; for it must be remembered that the deed last referred to conveyed to the trustees all the title which the grantors then had or might afterwards acquire.

If Mary Corcoran was dead in 1878, when the deed of release was executed to John and Mary Corcoran, the whole interest passed to John Corcoran.

We do not think it material that Dean was not made a party to the action brought by Raisch. If in consequence of this, some portion of the title conveyed to Burr and Dean remained in Dean, we do not see why that interest could not be released to John Corcoran, which would pass as above stated to Burr and Shotwell. If he was not a necessary party to the suit of Raisch, then the whole title passed to the purchaser at the sheriff's sale on the Raisch judgment, and the sheriff's deed made thereunder, and this title was conveyed to Jones. In either case the full legal title had passed to Jones long before Merle purchased. The court ruled correctly in finding that Merle was an innocent purchaser, and in ordering a nonsuit.

Judgment and order affirmed.

SHARPSTEIN, J., and MYRICK, J., concurred.